UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DEAN MYSLIVECEK, on behalf of himself and all others similarly situated, | Case No.: 2:21-cv-10346 |
| | Hon. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| FCA US LLC, a Delaware corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

The allegations in this complaint are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

## INTRODUCTION

1.     This is a putative class action against FCA US, LLC ("FCA," "Jeep," or "Defendant") on behalf of individuals who purchased or leased any of the following Jeep vehicles equipped with a manual transmission (hereinafter, the "Class Vehicles"):

- 2018-2021 Jeep Wrangler (2 door)

- 2018-2021 Jeep Wrangler Unlimited (4 door)

- 2020-2021 Jeep Gladiator

2.      The clutches and engines are the same or substantially the same in all Class Vehicles.  Every Class Vehicle is equipped with same 3.6L V6 engine that produces an advertised 285 horsepower and 260 lb-ft of torque.  The window sticker on every Class Vehicle specifies it would have a suitable 6-speed manual transmission able to handle the engine's power output.

3.     As described in greater detail below, a clutch is a vital component normally found in the drivetrains of manual transmission vehicles.  In short, the clutch provides a mechanism that couples the engine to the transmission which primarily allows a user to engage and disengage gears in the transmission to move

the vehicle.  A clutch, and its component parts – namely the friction plate and pressure plate – must be designed and manufactured with enough strength to stay engaged with the engine flywheel under normal conditions in order for the engine to transmit power to the ground.  When a clutch is not able to handle the power, the friction plate will start to slip on the flywheel, creating high temperatures. These high temperatures in turn create a failure condition that causes the vehicle to be unusable.  Additionally, due to the forces, materials, and mechanisms involved, a malfunctioning or incorrectly designed clutch can create dangerous conditions, including fires.  That is precisely what is happening to the Class Vehicles at issue here as a result of the "Clutch Defect."

4.     As FCA has explained, the "Clutch Defect" in the Class Vehicles occurs because "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture.  A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire.  A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris."

5.     The Clutch Defect is a severe safety defect that can not only cause the vehicle to lose power in traffic or other dangerous situations, but also in many instances can cause the vehicle to catch fire or for dangerous debris to be ejected. In fact, the situation is so dangerous that FCA has decided to recall all Class

Vehicles.  The only problem is that FCA's "remedy" is anything but.

6.      Instead of replacing the defective clutches with ones suitable for the Class Vehicles, FCA is attempting to "mitigate" the safety risks related to the Clutch Defect by effectively neutering the power output of the Class Vehicles' engines in order to prevent the clutch from failing.  But this "remedy" deprives Class Members of the benefit of their bargains – a Class Vehicle equipped with a 6-speed manual transmission and a 3.6L V6 engine that produces 285 horsepower and 260 lb-ft of torque.

7.      FCA has known about this problem for years but has taken no action to fix it.  This includes a previous recall following an investigation that resulted in simply replacing the clutch with identical, failure prone units.  Instead, FCA continued to sell the Class Vehicles as safe, reliable and fit for their ordinary purpose.  As a result, owners of the Class Vehicles have suffered damages, including, *inter alia*: (1) out-of-pocket expenses to repair or replace failed clutch and damaged parts; (2) costs for future repairs or replacements; (3) sale of their vehicle at a loss; and/or (4) diminished value of their vehicles.

## **JURISDICTION AND VENUE**

8.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than

100 Class members, members of the Classes (as defined below) are citizens of states different from FCA, and greater than two-thirds of the members of the Classes reside in states other than the states in which FCA is a citizen.

9.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because FCA resides in and is headquartered in this district, regularly transacts substantial business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.  Additionally, FCA has advertised in this district and has received substantial revenue and profits from its sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

10.     This Court has personal jurisdiction over FCA because it is headquartered and has otherwise conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within Michigan and throughout the United States.

**<u>PARTIES</u>**

**A.     Plaintiff**

11.     Plaintiff Dean Myslivecek is a citizen of New York and resides in Spencerport, NY.  Myslivecek owns a 2021 Jeep Wrangler, which he purchased for his personal or household use in November 2020 from an authorized Jeep

dealer, West Herr Dodge, Chrysler, and Jeep, in Lockport, NY.  Prior to his

purchase, Plaintiff Myslivecek reviewed and relied on the window sticker and

other materials prior to.  He also spoke with a sales representative about the Class

Vehicle he purchased.  None of the sources of information Plaintiff Myslivecek

reviewed disclosed the Clutch Defect.  If there had been such a disclosure,

Plaintiff Myslivecek would not have bought his Class Vehicle, or would have

paid less for it.

**B.     FCA**

12.     Defendant FCA US LLC ("FCA") is a limited liability company

organized and existing under the laws of the State of Delaware.  FCA's principal

place of business and headquarters is in Auburn Hills, Michigan, in the Eastern

District of Michigan.

13.     In January 2021, Fiat Chrysler Automobiles N.V., a Dutch

corporation headquartered in London, United Kingdom combined with Peugeot

S.A. a French company headquartered in Paris, France to form Stellantis N.V., a

Franco-Italian-American multinational automotive manufacturing corporation

headquartered in Amsterdam, Netherlands.  FCA US LLC exists as a corporate

entity in the United States under Stellantis N.V.  Stellantis N.V. generally holds

all assets of FCA and has successor liability for the claims at issue in this case.

14.     FCA (sometimes referred to as "Chrysler") is a motor vehicle

"Manufacturer" and a licensed "Distributor" of new, previously untitled Jeep brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new passenger cars and motor vehicles under its Jeep brand. Other major divisions of FCA include Ram, Chrysler, Fiat, Mopar- its automotive parts and accessories division, and SRT- its performance automobile division. As of 2015, FCA is the seventh largest automaker in the world by unit production. Stellantis will be the fourth largest automaker in the world following completion of the merger.

15.    FCA's business operations in the United States include the manufacture, distribution, and sale of motor vehicles and parts through its network of independent, franchised motor vehicle dealers. FCA is engaged in interstate commerce in that it sells vehicles through this network located in every state of the United States.

16.    FCA sells its vehicles through FCA franchise dealerships. FCA distributes information, including window stickers, about the Class Vehicles to its dealers for the purpose of passing that information to consumers. FCA also understands that its dealers pass on information from FCA about the characteristics, benefits, and quality of the Class Vehicles to consumers. The dealers act as FCA's agents in selling the Class Vehicles and disseminating information about them to customers and potential customers.

## TOLLING OF STATUTES OF LIMITATIONS

17.     Any applicable statute(s) of limitations have been tolled by FCA's knowing and active concealment and denial of the facts alleged herein.  Plaintiff and Class members could not have reasonably discovered the true nature of the defects at issue here, and FCA's role in causing the defects, until shortly before this class action litigation was commenced.

18.     FCA was and remains under a continuing duty to disclose to Plaintiff and the members of the Class the true character, quality and nature of the Class Vehicles, *i.e.* that the clutch is defective and will require costly repairs, pose safety concerns, and diminish the resale value of the Class Vehicles.  As a result of the active concealment by FCA, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## PRE-SUIT NOTICE

19.     On February 16, 2021, Plaintiff Myslivecek sent via certified mail a notice letter to FCA.  Among other information, the letter described the Clutch Defect and provided notice that Plaintiff intended to commence a lawsuit.  The letter further stated that it was "sent on behalf of all similarly situated U.S. owners of Jeep vehicles equipped with a manual transmission, regardless of model year (the 'Class Vehicles')."  The letter further stated that it provided notice under California Civil Code § 1782, "any other state-law consumer

protection statute requiring pre-suit notice," and to the extent applicable, notice of breach of warranty.

20.     FCA was also on notice of allegations underlying Plaintiff's claims as result of the First and Second Recalls of the Class Vehicles due to the Clutch Defect in 2020 and 2021, respectively.

## FACTUAL ALLEGATIONS

### A. Manual Transmissions And Clutches

21.     Among other components, transmissions are vital in transmitting a vehicle's engine power to the ground in order to propel the vehicle.  The transmission takes the power outputted from an engine and, using different gears, adapts the output speed of the engine (rpm) to match the rotational speed of the driven wheels.  The gears, in turn, multiply the torque (power) available at the driven wheel.  These principles are similar to that of changing gears on a bicycle.

22.     The most common transmissions outfitted on vehicles are manual and automatic transmissions.  This case deals only with vehicles with manual transmissions.  Manual transmissions normally use a mechanical linkage (a clutch) operated by the user to engage and disengage the transmission from the engine and a gear selector to select gears manually.  The ability to couple and decouple the engine from the transmission is required to be able to shift the transmission gears.

23.     The clutch is normally operated by the user via a third pedal to the left of the brake pedal.  When the clutch pedal is pressed *in,* the clutch is *disengaged,* and the user can shift gears because the engine and transmission are decoupled. When the clutch pedal is *not* pressed, the clutch is *engaged* such that engine power is transferred from the engine to the transmission and to the driven wheels.

24.     While engines, clutches, and transmissions have complicated mechanical components, the parts at issue here can be described simply.  There are three basic parts: (1) the engine flywheel, (2) the clutch pressure plate, and (3) the clutch friction disc.

25.     The engine outputs power to the flywheel, which is a large spinning metal disc.  When the clutch is *engage*d, the clutch pressure plate – which is simply a large spring – presses the clutch friction plate into the flywheel causing friction, thereby transmitting power between the engine, clutch, and transmission (which are now coupled and spin together):



26.     When the clutch is *disengaged* the pressure plate is kept from putting

pressure on the friction plate, and the engine is then allowed to spin separately

from the clutch and transmission.



27.     One of the critical design criteria for a clutch is the amount of power

that can be transmitted when coupled.  Clutches can be designed to fit the power,

weight, and use of a vehicle by varying the size of the friction disc, the strength

and size of the pressure plate, and the materials used, among other variables.  All

of these design options are ultimately balanced with factors such as cost,

packaging, and efficiency.  If the clutch is improperly designed or has deficient

characteristics, the clutch friction plate will slip on the engine flywheel and power

will be transferred to heat and even fail all together.  This is the case here.

**B.    FCA's First Recall Due To The Clutch Defect**

28.    Since at least late 2019, FCA and their Vehicle Safety and Regulator

Compliance ("VSRC") organization has formally investigated the Clutch Defect

issue following numerous customer inputs for fire incidents, including scrambles

to incident vehicles and conducting their own lab analysis:

> • On November 27, 2019, the FCA US LLC ("FCA US") Vehicle Safety and Regulatory Compliance ("VSRC")
> organization opened an investigation as a result of customer inputs for fire incidents on 2018-2020 MY Jeep
> Wrangler and the 2020 MY Jeep Gladiator vehicles.

29.    On February 25, 2020, FCA US determined, through the VSRC, to

conduct a voluntary safety recall of the affected Class Vehicles.  This decision

followed the analysis of VSRC's Materials Engineering Lab that "the clutch

pressure plate reached 1100 degrees Celsius demonstrating the pressure plate is a

competent ignition source:"

• On February 5, 2020, FCA US VSRC Materials Engineering Lab completed an analysis of the transmission components and determined the clutch pressure plate reached 1100 degrees Celsius demonstrating the pressure plate is a competent ignition source. The supplier duplicated the failed pressure plate demonstrating the pressure plate was not a fire effect.

30.    On March 3, 2020, NHTSA Recall No. 20V-124 was publicly released (the "First Recall").  The First Recall covered all 2018-2020 Jeep Wranglers and all 2020 Jeep Gladiators equipped with manual transmissions. Using production records, FCA determined that the defective Wranglers were those manufactured between August 23, 2017 and February 13, 2020.  FCA similarly determined that the defective Gladiators were those manufactured between December 21, 2018 and February 20, 2020.  At the time, FCA represented (incorrectly) that only an estimated 1% of Class Vehicles were at risk of the Clutch Defect:

**Population :**

Number of potentially involved : 33,237
Estimated percentage with defect :   1 %

31.    As the First Recall details, the Clutch Defect occurs because "the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture.  A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire.  A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris:"

| Description of the Defect : | In some circumstances, the clutch pressure plate may become overheated through friction, which may lead the pressure plate to fracture. A fractured pressure plate may crack or fracture the transmission case, allowing heated debris to contact ignition sources on the vehicle, potentially leading to a vehicle fire. A fractured pressure plate may also lead to a loss of propulsion, or generation of road debris. |
|---|---|

32.    There is no question the Clutch Defect poses a serious safety risk due to propensity for fire and loss of a propulsion when it manifests, which can cause the Class Vehicles to crash without prior warning:

| Description of the Safety Risk : | If the heated clutch components ignite a fuel source, a vehicle fire can result, which increases the risk of occupant injury and injury to persons outside the vehicle, as well as property damage. Also, a cracked or fractured transmission case can generate road debris and/or result in loss of propulsion, which can cause a vehicle crash without prior warning. |
|---|---|

33.    The First Recall also identifies the burnt clutch odor or increased clutch travel as warning signs of the Clutch Defect:

| Identification of Any Warning that can Occur : | In some circumstances, the operator may smell a burnt clutch odor, or have excessive or abnormal clutch pedal travel prior to the failure. |
|---|---|

34.    At the time the First Recall was announced in March 2020, FCA's remedy was "unknown" because the "remedy action [was then] under development."  Nonetheless, FCA identified the "Clutch plate and disc" or "Clutch Kit pressure plate and disc" as components to be replaced in affected Class Vehicles:

**Description of Remedy :**

| | |
|---|---|
| Description of Remedy Program : | FCA US will conduct a voluntary safety recall on affected vehicles; the remedy action is currently under development. |
| | FCA US has a longstanding policy and practice of reimbursing owners who have incurred the cost of repairing a problem that subsequently becomes the subject of a field action. To ensure consistency, FCA US, as part of the owner letter, will request that customers send the original receipt and/or other adequate proof of payment to the company for confirmation of the expense. |
| How Remedy Component Differs from Recalled Component : | Part Name: Clutch Kit pressure plate and disc |
| | Part Description: Clutch plate and disc |
| | Part Number: 68273845AB,68273845AC |
| | Part Comment: Remedy unknown |

## C.     FCA's Second Recall Due To The Clutch Defect

35.     Approximately nine months later, on January 28, 2021, FCA announced NHTSA Recall No. 21V-028, a second recall related to the Clutch Defect (the "Second Recall").

36.     The Second Recall covers all 2018-2021 Jeep Wranglers equipped with a manual transmission manufactured between August 23, 2017 and January 22, 2021, as well as all 2020-2021 Jeep Gladiators equipped with a manual transmission manufactured between December 21, 2018 and January 22, 2021:

> The suspect period began on August 23, 2017, when production of Jeep Wrangler vehicles equipped with manual transmissions started, and concluded on January 22, 2021, when shipment of Jeep Wrangler vehicles with manual transmissions ended.

> The suspect period began on December 21, 2018, when production of Jeep Gladiator vehicles equipped with manual transmissions started, and concluded on January 22, 2021, when shipment of Jeep Gladiator vehicles with manual transmissions ended.

37.     For the Second Recall, FCA increased the "[e]stimated percentage [of Class Vehicles] with defect" from 1% of 33,327 Class Vehicles to 100% of

42,887 Class Vehicles:

**Population :**

| | |
|---|---|
| Number of potentially involved : | 42,887 |
| Estimated percentage with defect : | 100 % |

38.    The Second Recall confirms that every Class Vehicle is subject to the

Clutch Defect in that "the clutch pressure plate may become overheated through

friction, which may lead the pressure plate to rapidly fracture:"

| | |
|---|---|
| Description of the Defect : | In some circumstances, the clutch pressure plate may become overheated through friction, which may lead the pressure plate to rapidly fracture. When a pressure plate fractures, it may result in cracks or holes in the transmission case, allowing heated debris to be expelled from the transmission case. |

39.    The Second Recall further confirms that there remains no question

that the Clutch Defects continues to pose a serious safety to occupants and others:

| | |
|---|---|
| Description of the Safety Risk : | Heated debris expelled from the transmission case may come in contact with combustible materials in the vehicle, potentially leading to a fire. A fire can result in increased risk of occupant injury and injury to persons outside the vehicle. In addition, this condition may lead to generation of road debris, which may be a hazard to other drivers. |

**D.    FCA's Half-Baked "Remedy" Deprives Owners Of The Benefit Of Their Bargains**

40.    Despite having 100% of Class Vehicles at risk of experiencing the

Clutch Defect – *i.e.*, the clutch literally fracturing – during normal operation,

FCA insists that there "is no defective part" in the Class Vehicles leading to the

Clutch Defect, instead claiming the "issue is the result of design specification:"

| | |
|---|---|
| How Remedy Component Differs from Recalled Component : | There is no defective part. The issue is the result of design specification. Remedy is updated software for the vehicle that mitigates safety risks related to the clutch assembly. |

41.    Explained differently, FCA's "result of design specification" explanation essentially amounts to a concession that FCA installed one or more clutch components in the Class Vehicles that were not suitable for that application.

42.    It gets worse.  FCA's purported "remedy" is "updated software for the vehicle that <u>mitigates safety risks</u> related to the clutch assembly."

| How Remedy Component Differs from Recalled Component : | There is no defective part. The issue is the result of design specification. Remedy is updated software for the vehicle that mitigates safety risks related to the clutch assembly. |
|---|---|

43.    As FCA explains, it will recall the Class Vehicles "to add software <u>to reduce engine torque capability</u> when clutch assembly temperatures rise to a level that may damage the inner pressure plate:"

| Description of Remedy Program : | FCA US will conduct a voluntary safety recall on all affected vehicles to add software to reduce engine torque capability when clutch assembly temperatures rise to a level that may damage the inner pressure plate. |
|---|---|

44.    A January 29, 2021 communication from FCA to dealers confirms that under the Second Recall, FCA will "reprogram the Powertrain Control Module (PCM) software to reduce engine torque capability when clutch assembly temperatures rise:"

**SERVICE ACTION**
FCA US will conduct a voluntary safety recall to reprogram the Powertrain Control Module (PCM) software to reduce engine torque capability when clutch assembly temperatures rise to a level that may damage the inner pressure plate. Dealers will be notified of the launch of this safety recall by way of established communication methods.  This recall is estimated to launch in the 1st Quarter of 2021.

45.    But FCA's "remedy" is not actually a remedy.  First, the "remedy"

16

fails to replace the defective clutch components that cause the Clutch Defect with non-defective clutch components that are suitable for the engine's power.  In fact, FCA has decided to stop replacing clutches in affected Class Vehicles.  Second, FCA's actual remedy – "to add software to reduce engine torque capability when clutch assembly temperatures rise to a level that may damage the inner pressure plate" – is worthless because there is no sensor to measure clutch assembly temperatures on the vehicles currently.  Third, since FCA's "remedy" is designed to mitigate – not eliminate – the safety risks posed by the Clutch Defect, it is not guaranteed to fix or prevent the Clutch Defect in the future.  Finally, the only guaranteed result of FCA's purported "remedy" is a reduction of the maximum torque output of the Class Vehicle's engines.  In other words, FCA's "remedy" of neutering the engines only guarantees that Class Members will lose the benefit of their bargains (a Class Vehicle with an engine that produces 285 horsepower and 260 lf-ft. of torque) while still leaving them at risk of having the Clutch Defect manifest during normal operation.

46.    Plaintiff and Class members purchased their vehicle based on the understanding that it would be safe for normal use and had particular characteristics, including a working clutch and a specific engine output power. Had they known that their vehicle was sold with a defective clutch, or would have reduced engine output power in order to make the transmission function correctly,

they would not have purchased their vehicle, or would not have done so on the same terms.

**E.    FCA's Knowledge Of The Clutch Defect**

47.    Design and specification tolerances of clutches and engines is a well understood relationship.  FCA must have anticipated the Clutch Defect from the moment it decided on the engine output and clutch specification, and at the least the moment it put the feature on the market.  FCA also would have known about the defect through sources not available to Plaintiff and Class members, including, but not limited to: pre-production testing, pre-production design failure mode and analysis data, production design failure mode and analysis data, early consumer complaints made exclusively to FCA's network of dealers and directly to FCA, aggregate warranty data compiled from FCA's network of dealers, testing conducted by FCA in response to consumer complaints, and repair order and parts data received by FCA from its network of dealers and suppliers.

48.    In addition to their own investigations, FCA must have gained knowledge of the Clutch Defect and consumers' dissatisfaction with the recalls and remedies.

49.    For many years, FCA also would have been aware of customer complaints about the Clutch Defect's existence and fires, and the insufficiency of their recall as a result of online reputation management (or "ORM") efforts.

ORM is now a standard business practice among most major companies and entails monitoring consumer forums, social media and other sources on the internet where consumers can review or comment on products. "Specifically, [online] reputation management involves the monitoring of the reputation of an individual or a brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before they damage the individual's or brand's reputation."[1] The growth of the internet and social media, along with the advent of reputation management companies, has led to ORM becoming an integral part of many companies' marketing efforts.

50. For many years, owners have been complaining about the Clutch Defect on Jeep enthusiast websites like jlwranglerforums.com. FCA would have learned about these complaints in connection with its ORM efforts. The unusually high number of consistent complaints spanning many years would have put FCA on notice of the Clutch Defect. Examples are quoted below, but many more are available online. For instance, a thread started in March of 2020 now spans over 100 pages on jlwranglerforums.com.[2] Some posts include:

- March 2020: "Anyone know at this point if it is still safe to drive? Someone posted pictures of pieces shooting through their engine. Just

---

[1] https://en.wikipedia.org/wiki/Reputation_management#Online_reputation_management.
[2] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/

trying to figure out. Lucky for me, I have another vehicle to drive if I need too. As a note, I have smelt the burning smell coming from the clutch, and thought it was because it was new. Now, I am beginning to wonder."[3]

- o <u>March 11 Response to post above</u>:  "I'm interested to know if it is safe to drive as well. Like you, I'm fortunate to have another car to drive."

- <u>April 2020</u>:  "Waiting an unknown amount of time is problematic to me by itself. Then, there is the possibility that they may not have a reason to open the bell housing, and choose to shield components from the supersonic pieces of a fractured pressure plate. I live in an area with a lot of hills and I know my clutch slips when it isn't supposed to. I'm trying to get ahead of the issue, and FCA isn't helping."[4]

- <u>June 2020</u>: "New 2020 JL with 505 miles total clutch failure driving in 3rd on residential street. Clutch felt a little loose right off the dealers lot to both me and my wife, we've driven standards for >100 years between us, this is our 4th Wrangler. Service manager at first

---

[3] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1050046
[4] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1093131

tried to blame it on our driving, never acknowledged recall until we asked (supposedly fix done before we bought it) FCA warranted repair, we are taking it to another dealer to check out. Hope yall have better luck."[5]

- Aug. 2020 "This just happen to my jeep thank god no fire. They are investigating it. It did exactly as recall said it would. I also notice burn smell at short times and thought it was because it was new. Should not even be investigated in my view."[6]



---

[5] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1147954

[6] https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1209198



51.    Moreover, owners of the Class Vehicles have complained about the

Clutch Defect to the National Highway Traffic Safety Administration NHTSA.

52.    Since 2018 at the latest, Defendant has constantly tracked the NHTSA

database to track reports concerning problems with its vehicles, including

problems with the clutches in Class Vehicles.  From this source, Defendant knew

that vehicles were experiencing unusually high levels of problems with the

manual transmissions due to the Clutch Defect.

53.    Defendant would have monitored and been aware of these complaints

---

[7] Notably, this picture shows a hole in the floorboard where hot debris entered the passenger cabin.  The poster warned other owners:  "Take it in make sure your on list for repair and don't drive or they will blame you."  As the poster further explained, , " "So they did honor the recall.  Please don't drive till fixed my granddaughter was in passenger seat where hole is floor matte saved her from injury.  I'm still real upset it was sold like that to me. Came from California they stated they fixed it in May after they acknowledged the recall.  Two grandsons 5 and 6 in back and 11 year old in front.  I have seen them burned to ground in searching.". *See* https://www.jlwranglerforums.com/forum/threads/clutch-recall-fca-w12-20v-124-on-2018-2020-jl-manuals-overheating-clutch-pressure-plate.47887/post-1215037.

because Federal law requires automakers to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See TREAD Act*, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

54.     Automakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*.

55.     Defendant also monitors NHTSA complaints, knowing that it is often the case that for every person who complains about a defect, there are many other people who experienced the same defect but who do not complain to NHTSA. Thus, monitoring NHTSA complaints can serve as an early warning system for car defects.

56.     Defendant also knew or should have known about the Clutch Defect because of the similarity of complaints. The fact that so many customers made similar complaints indicates that the complaints were not the result of user error

or anomalous incidents, but instead a systemic problem with the Class Vehicles. Here, the reports and complaints from consumers were similar enough to put Defendant on notice that the incidents described were the result of a defect, and that the Class Vehicles were experiencing unusually high levels of complaints about the Clutch Defect.

57.    The complaints to NHTSA listed below are examples only.  They are not the universe of complaints Defendant would have seen.

*2018 Jeep Wrangler (2 door)*



**May 15, 2018** NHTSA ID NUMBER: 11093877
**Components: POWER TRAIN**

**NHTSA ID Number:** 11093877

**Incident Date** May 7, 2018

**Consumer Location** TETON VILLAGE, WY

**Vehicle Identification Number** 1C4HJXFG5JW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

VEHICLE WAS PARKED AND WOULD NOT ENGAGE INTO A GEAR. I TURNED OFF AND RESTARTED AND WAS ABLE TO GET INTRO GEAR, AND ENGINE LIGHT WAS ON, IT WOULD NOT GET OUT OF 6TH GEAR, BROUGHT TO DEALER AND THEY SAID TRANSMISSION NEEDED A RE FLASH, AND IT WAS GOOD, NEXT DAY IT WOULD NOT GO INTO GEAR, I SHIFTED TRANSFER CASE FROM 2H TO 4H BACK TO 2H AND ENGINE LIGHT WAS ON, I WAS ABLE TO DRIVE TO DEALERSHIP.

I WAS TOLD THAT THEY ARE PUTTING IN A NEW TRANSMISSION AND AM WAITING FOR COMPLETION.

I DO NOT FEEL SAFE WITH THIS VEHICLE AND AM LOOKING FOR A BUY BACK FROM MANUFACTURE, VEHICLE ONLY HAS 1,500 MILES ON IT. *TT

UPDATED 9/20/18*JB

October 15, 2018  NHTSA ID NUMBER: 11140284

**Components: STRUCTURE, ENGINE, POWER TRAIN**

**NHTSA ID Number:** 11140284

**Incident Date** October 15, 2018

**Consumer Location** NEWTOWN, PA

**Vehicle Identification Number** 1C4AJWBG9JL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VEHICLE DRIVEN FO APPROXIMATELY 30 MINUTES WITH NO APPARENT ISSUES. AVERAGE SPEED ABOUT 40 TO 50 MPH. DRIVER SMELLED A CONCERNING ODOR, PULLED INTO A PARKING, GOT OUT OF VEHICLE AND NOTICED A FLAME. SHE CALLED 911AND VEHICLE BECAME FULLY ENGULFED. VEHICLE IS A TOTAL LOSS. AFTER SOME RESEARCH, IT APPEARS THIS IS AN ISSUE WITH JEEP. |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |

April 9, 2019 NHTSA ID NUMBER: 11194837

**Components: POWER TRAIN**

**NHTSA ID Number:** 11194837

**Incident Date** April 3, 2019

**Consumer Location** WYNANTSKILL, NY

**Vehicle Identification Number** 1C4HJXEN5JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | PURCHASED NEW 2018 JEEP WRANGLER ON MONDAY APRIL 1,2019. NOTICED VEHICLE WAS LEAKING IN DRIVEWAY LESS THEN 24 HOURS AFTER PURCHASE. CALLED DEALER AND RETURNED VEHICLE FOR EVALUATION OF LEAK. ISSUE-FACTORY DEFECTIVE TRANSMISSION. HAD NOT BEEN THOROUGHLY INSPECTED PRIOR TO DELIVERY AND WAS DELIVERED TO US WITH FACTORY DEFECTIVE TRANSMISSION DUE TO CRACKED CASING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

April 22, 2019 NHTSA ID NUMBER: 11202895
**Components: POWER TRAIN**

⊖

**NHTSA ID Number:** 11202895

**Incident Date** November 16, 2018

**Consumer Location** GREENLAWN, NY

**Vehicle Identification Number** 1C4HJXEG0JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | MANUAL TRANSMISSION STARTED POPPING OUT OF 2ND GEAR AROUND 9500 MILES. TRANSMISSION HAD TO BE REPLACED. AT 11,500 CREEKING NOISE WHEN TURNING LEFT/RIGHT. HAD TO HAVE REAR AXLES & REAR DIFFERENTIAL REPLACED. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

**1 Affected Product** ▾

February 9, 2020 NHTSA ID NUMBER: 11307999 

## Components: FUEL/PROPULSION SYSTEM, POWER TRAIN, UNKNOWN OR OTHER

**NHTSA ID Number:** 11307999

**Incident Date** December 21, 2019

**Consumer Location** SPRING GROVE, PA

**Vehicle Identification Number** 1C4HJXDG6JW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VEHICLE WAS BEING DRIVEN APPROX 30MPH ON A CITY ROAD WHEN A LOUD BANG WAS HEARD. IMMEDIATELY PULLED OVER AND LUCKILY A STRANGER FOLLOWING BEHIND QUICKLY ESCORTED THE DRIVER OUT AS THE VEHICLE COMPLETELY WENT UP IN FLAMES. METAL CHUNKS AND PIECES COULD BE HEARD FALLING UNDERNEATH THE VEHICLE. UPON CLOSER INSPECTION THE TRANSMISSION HAD COMPLETELY EXPLODED AND EJECTED THE CLUTCH ASSEMBLY SHEARING THE INPUT SHAFT AND RUPTURING A FUEL LINE. THE VEHICLE WAS A COMPLETE TOTAL LOSS WITH FLAMES IMMEDIATELY ENTERING THE PASSENGER CABIN IN SECONDS. IF IT WAS NOT FOR A BRAVE BYSTANDER SERIOUS INJURY OR DEATH WOULD HAVE OCCURRED. THIS IS A NEW TRANSMISSION INTRODUCED IN THE NEW JL WRANGLER AND GLADIATOR AND HAS BEEN HAPPENING MORE AND MORE. ITS A SERIOUS SAFETY ISSUE THAT JEEP REFUSES TO LOOK INTO AND NEEDS TO BE INVESTIGATED IMMEDIATELY. TRANSMISSION EXPLOSION TO THIS DEGREE NOT ONLY CAN RESULT IN A FIRE BUT ALSO METAL PROJECTILES HITTING BYSTANDERS AND COMING THROUGH THE FLOOR BOARDS AND POSSIBLY RESULTING IN INJURY OR DEATH. IF YOU ARE READING THIS AND HAVE A MANUAL JEEP WRANGLER HAVE IT CHECKED IMMEDIATELY! THIS WAS A COMPLETELY UNKNOWN PROBLEM SHOWING NO SYMPTOMS WHATSOEVER.*JB |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**September 3, 2020** NHTSA ID NUMBER: 11353085

**Components: POWER TRAIN**

**NHTSA ID Number:** 11353085

**Incident Date** July 5, 2020

**Consumer Location** TOBYHANNA, PA

**Vehicle Identification Number** 1C4BJWEG1JL****

**Summary of Complaint**

| CRASH | No | THE CLUTCH BROKE INTO PIECES AS I WAS DRIVING ON THE |
| FIRE | No | HIGHWAY. THE JEEP BARELY REACHED 50,000 MILES. |
| INJURIES | 0 | |
| DEATHS | 0 | |



**June 8, 2020** NHTSA ID NUMBER: 11327676

**Components: POWER TRAIN**

**NHTSA ID Number:** 11327676

**Incident Date** June 8, 2020

**Consumer Location** Unknown

**Vehicle Identification Number** 1C4HJXDG3JW****

**Summary of Complaint**

| CRASH | No | NOTICED A BURNT CLUTCH SMELL. COULD NOT ACCELERATE |
| FIRE | Yes | AFTER CLUTCH BURNT OUT. CAR WAS IN MOTION WHEN |
| INJURIES | 0 | TRYING TO TRANSITION AND ACCELERATE AND THE CLUTCH |
| DEATHS | 0 | STARTED BURNING AND SMOKING AND THE GAS PEDAL STOPPED ACCELERATING. *TR |



**September 8, 2020** NHTSA ID NUMBER: 11353833

**Components: STRUCTURE, ELECTRICAL SYSTEM, POWER TRAIN**

**NHTSA ID Number:** 11353833

**Incident Date** September 30, 2019

**Consumer Location** MERRITT ISLAND, FL

**Vehicle Identification Number** 1C4HJXEG1JW****

**Summary of Complaint**

| CRASH | No | WHILE MY 16-YEAR-OLD DAUGHTER AND I WERE DRIVING ON |
| FIRE | Yes | THE FL 528/BEACHLINE EXPRESSWAY THE ENTIRE CLUTCH |
| INJURIES | 0 | PRESSURE PLATE ASSEMBLY EXPLODED OFF MY VEHICLE. |
| DEATHS | 0 | FLUIDS DRAINED AND IGNITED. THE ENTIRE VEHICLE WAS BURNED TO ASHES. THE FULL ACCIDENT INVESTIGATION REPORT IS INCLUDED IN THE UPLOAD. |

28



**August 5, 2020** NHTSA ID NUMBER: 11343495

## Components: POWER TRAIN

**NHTSA ID Number:** 11343495

**Incident Date** May 26, 2020

**Consumer Location** VENTURA, CA

**Vehicle Identification Number** 1C4HJXFG1JW****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I WAS NOTIFIED OF A SAFETY RECALL ON MY 2018 JEEP WRANGLER BY THE NHTSA BACK IN MAY OF 2020. I CALLED MY DEALERSHIP (CROWN CHRYSLER AND DODGE) TO SCHEDULE THE REPAIR AT THE END OF MAY. I WAS TOLD THEY WERE GOING TO ORDER THE NECESSARY PARTS TO FIX THE ISSUE AND WOULD CALL ME BACK. I NEVER RECEIVED A TELEPHONE CALL BACK FROM THEM, EVEN AFTER I CALLED BACK SEVERAL MORE TIMES OVER THE COURSE OF 3 1/2 MONTHS, TRYING TO GET THIS SAFETY RECALL FIXED. THEY ARE REFUSING TO RETURN CALLS ON THIS MATTER, REFUSING TO PERFORM THE RECALL FIX AND REFUSING TO TAKE A WRITTEN COMPLAINT FROM ME OVER THE MATTER. NOW WHEN I CALL THEM ASKING FOR AN APPOINTMENT TO FIX THE RECALL, THEY SIMPLY HANG UP ON ME. PER THIS SAFETY RECALL, MY VEHICLE HAS THE POTENTIAL TO CATCH FIRE WHILE BEING DRIVEN, PUTTING MYSELF AND FAMILY IN DANGER.



**September 12, 2020** NHTSA ID NUMBER: 11354587

## Components: POWER TRAIN

**NHTSA ID Number:** 11354587

**Incident Date** September 11, 2020

**Consumer Location** SEWELL, NJ

**Vehicle Identification Number** 1C4AJWAG9JL****

**Summary of Complaint**

| CRASH | No |
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

PRESSURE PLATE BROKE CAUSING CLUTCH TO BURN OUT IN LESS THAN A MILE DRIVE. JEEP HAS 41K MILES ON IT AND ITS CURRENTLY AT DEALERSHIP AWAITING REPAIR



**September 22, 2020** NHTSA ID NUMBER: 11360470

**Components: POWER TRAIN**

**NHTSA ID Number:** 11360470

**Incident Date** September 5, 2020

**Consumer Location** UNIONTOWN, PA

**Vehicle Identification Number** 1C4BJWEGXJL****

**Summary of Complaint**

| CRASH | No | BOUGHT A CERTIFIED USED 2018 JEEP WRANGLER JKU WITH |
| FIRE | No | 41300 MILES AFTER A MONTH AND ABOUT 1200 MILES |
| INJURIES | 0 | LOCKED 4X4 IN DRIVING IN MY FIELD TO CHECK MY CATTLE |
| DEATHS | 0 | GOT BACK ON ROAD TOOK 4X4 OUT DROVE ABOUT A MILE |

BOUGHT A CERTIFIED USED 2018 JEEP WRANGLER JKU WITH 41300 MILES AFTER A MONTH AND ABOUT 1200 MILES LOCKED 4X4 IN DRIVING IN MY FIELD TO CHECK MY CATTLE GOT BACK ON ROAD TOOK 4X4 OUT DROVE ABOUT A MILE HEADING HOME SMELT BURNING SMELL FROM TRANNY SMELT LIKE CLUTCH HEARD BANG MOTOR REVED UP QUIT MOVING PIECE OF CLUTCH CAME THREW TRANNY



**January 11, 2021** NHTSA ID NUMBER: 11387566

**Components: POWER TRAIN**

**NHTSA ID Number:** 11387566

**Incident Date** December 31, 2020

**Consumer Location** BROOKLYN, NY

**Vehicle Identification Number** 1C4GJXAG4JW****

**Summary of Complaint**

| CRASH | No | TL* THE CONTACT CALLED ON BEHALF OF HIS CLIENT WHO |
| FIRE | Yes | OWNED 2018 JEEP WRANGLER. THE CONTACT STATED AFTER |
| INJURIES | 0 | |
| DEATHS | 0 | |

TL* THE CONTACT CALLED ON BEHALF OF HIS CLIENT WHO OWNED 2018 JEEP WRANGLER. THE CONTACT STATED AFTER THE CLIENT PURCHASED THE VEHICLE AND DROVE OFF THE LOT, WHEN HE SAW SMOKE EXITING THE HOOD. THE CLIENT WAS ABLE TO PARK SAFELY ON THE SIDE OF THE ROAD AND EXIT THE VEHICLE. THE CLIENT ALSO STATED HE VEHICLE CAUGHT FIRE. THE FIRE DEPARTMENT WAS ABLE TO EXTINGUISH THE FIRE. THE FIRE DEPARTMENT AND POLICE FILED A REPORT. THE VEHICLE WAS NOT DRIVABLE AND WAS DEEMED TOTAL LOSS FROM THE INSURANCE COMPANY. THE CLIENT DID NOT HAVE ANY INJURIES. THE CLIENT INFORMED THE DEALER REGARDING TO THE FAILURE. THE CONTACT STATED UPON INVESTIGATION, THE VIN WAS ASSOCIATED TO NHTSA CAMPAIGN NUMBER: 20V124000 (POWER TRAIN). THE MANUFACTURER HAD BEEN INFORMED OF THE FAILURE. THE FAILURE MILEAGE WAS 36,033.

*2019 Jeep Wrangler (2 door)*



**March 11, 2019** NHTSA ID NUMBER: 11185949
**Components: POWER TRAIN**

**NHTSA ID Number:** 11185949

**Incident Date** March 5, 2019

**Consumer Location** BOWIE, MD

**Vehicle Identification Number** 1C4HJXFG4KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING TO WORK HAD PROBLEMS WITH ENGINE REVVING TRYING TO SHIFT THERE WAS A LOUD BANG, PULLED OFF THE ROAD, STARTED SEEING SMOKE COME FROM THE VEHICLE THEN WAS ENGULFED IN FLAMES AND BURNED COMPLETELY UP. THERE IS A COMPLAINT WITH FCA CASE NUMBER 58132542 THE VEHICLE WAS TRAVELING AT 40 MPH ON 295 PARKWAY WHEN THE PROBLEM STARTED. I DID NOT TAKE ANY PICTURES THERE IS A POLICE REPORT IF NEEDED. THE VEHICLE HAD ONLY BEEN IN MY POSITION SENSE 26 JAN 2019 WITH ONLY 1000 MILES ON IT WHEN IT HAD A CATASTROPHIC FAILURE THAT RESULTED JEEP TOTALLY BURNING UP. *DT*JB |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**March 15, 2020** NHTSA ID NUMBER: 11318152
**Components: POWER TRAIN**

**NHTSA ID Number:** 11318152

**Incident Date** December 31, 2019

**Consumer Location** BLYTHEWOOD, SC

**Vehicle Identification Number** 1C4GJXAG6KW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | WHILE DRIVING UP A MOUNTAIN ROAD REQUIRING UP AND DOWN SHIFTING THE CLUTCH OVER HEATED. IT WAS NOT THE BRAKES SINCE WE I WAS CLIMBING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

## *2020 Jeep Wrangler (2 door)*



**May 8, 2020** NHTSA ID NUMBER: 11323805
**Components: POWER TRAIN**

**NHTSA ID Number:** 11323805

**Incident Date** May 7, 2020

**Consumer Location** BELMONT, NC

**Vehicle Identification Number** 1C4HJXCG1LW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | I BELIEVE THE VEHICLE CLUTCH FAILED AND THE VEHICLE LOST FORWARD PROPULSION. PRIOR TO THE LOSS OF CLUTCH PRESSURE AND PROPULSION, A STRONG BURNING SMELL WAS NOTED COMING FORM THE VEHICLE, FOLLOWED BY SMOKE. THE VEHICLE WAS IN MOTION, GOING THROUGH STOP AND GO TRAFFIC, ON A CITY STREET. I BELIEVE THIS IS RELATED TO RECALL 20V124000. THE VEHICLE HAS 138 MILES ON IT AND WAS BEING DRIVEN HOME AFTER BEING PURCHASED NEW FROM THE DEALERSHIP. *TR |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

## *2021 Jeep Wrangler (2 door)*



**February 8, 2021** NHTSA ID NUMBER: 11395249
**Components: POWER TRAIN**

**NHTSA ID Number:** 11395249

**Incident Date** January 18, 2021

**Consumer Location** EASTVALE, CA

**Vehicle Identification Number** 1C4HJXEG2MW****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | DRIVING ON THE FREEWAY AND "SERVICE SHIFTER" WARNING APPEARED ON AND OFF. ALSO, WHILE DRIVING ON A CITY STREET THE WARNING CAME ON AND OFF. LIGHTS ON THE SHIFTER FLASHED. DEALERSHIP SAYS THE VALVE BODY IN THE TRANSMISSION IS DEFECTIVE AND NEEDS TO BE REPLACED OR THE WHOLE TRANSMISSION NEEDS TO BE REPLACED. THEY STATED IT'S A SERIOUS SAFETY CONCERN BECAUSE THE CAR CAN STOP SHIFTING ALTOGETHER WHILE DRIVING. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |



February 9, 2021 NHTSA ID NUMBER: 11395429
**Components: POWER TRAIN**

**NHTSA ID Number:** 11395429

**Incident Date** February 9, 2021

**Consumer Location** MIAMI, FL

**Vehicle Identification Number** 1C4HJXDG5MW****

**Summary of Complaint**

| CRASH | No | THERE IS AN ACTIVE RECALL FOR THIS JEEP MODEL. I TOOK |
|---|---|---|
| FIRE | No | IT TO THE DEALER TODAY, FEBRUARY 9, 2021, TO GET IT FIX AND THEY DO NOT HAVE THE PARTS. THE DEALER (PLANET |
| INJURIES | 0 | DODGE IN MIAMI, FL) INSTRUCTED ME TO CALL FCA GROUP (FIAT CHRYSLER AUTOMOBILE -- OWNERS OF JEEP), WHICH I |
| DEATHS | 0 | DID IN FRONT OF THEM, AND NO FIXING OR RESOLUTION. PART OF THE RECALL STATES HEATED DEBRIS EXPELLED FROM THE TRANSMISSION CASE MAY COME IN CONTACT WITH COMBUSTIBLE MATERIALS IN THE VEHICLE, POTENTIALLY LEADING TO A FIRE. |

*2019 Jeep Wrangler Unlimited (4 door)*



March 11, 2019 NHTSA ID NUMBER: 11185949
**Components: POWER TRAIN**

**NHTSA ID Number:** 11185949

**Incident Date** March 5, 2019

**Consumer Location** BOWIE, MD

**Vehicle Identification Number** 1C4HJXFG4KW****

**Summary of Complaint**

| CRASH | No | WHILE DRIVING TO WORK HAD PROBLEMS WITH ENGINE |
|---|---|---|
| FIRE | Yes | REVVING TRYING TO SHIFT THERE WAS A LOUD BANG, PULLED OFF THE ROAD, STARTED SEEING SMOKE COME FROM |
| INJURIES | 0 | THE VEHICLE THEN WAS ENGULFED IN FLAMES AND BURNED COMPLETELY UP. THERE IS A COMPLAINT WITH FCA CASE |
| DEATHS | 0 | NUMBER 58132542 THE VEHICLE WAS TRAVELING AT 40 MPH ON 295 PARKWAY WHEN THE PROBLEM STARTED. I DID NOT TAKE ANY PICTURES THERE IS A POLICE REPORT IF NEEDED. THE VEHICLE HAD ONLY BEEN IN MY POSITION SENSE 26 JAN 2019 WITH ONLY 1000 MILES ON IT WHEN IT HAD A CATASTROPHIC FAILURE THAT RESULTED JEEP TOTALLY BURNING UP. *DT*JB |



March 15, 2020 NHTSA ID NUMBER: 11318152

**Components: POWER TRAIN**

**NHTSA ID Number:** 11318152

**Incident Date** December 31, 2019

**Consumer Location** BLYTHEWOOD, SC

**Vehicle Identification Number** 1C4GJXAG6KW****

**Summary of Complaint**

| CRASH | No | WHILE DRIVING UP A MOUNTAIN ROAD REQUIRING UP AND DOWN SHIFTING THE CLUTCH OVER HEATED. IT WAS NOT THE BRAKES SINCE WE I WAS CLIMBING. |
|---|---|---|
| FIRE | No | |
| **INJURIES** | 0 | |
| DEATHS | 0 | |

*2020 Jeep Wrangler Unlimited (4 door)*



May 8, 2020 NHTSA ID NUMBER: 11323805

**Components: POWER TRAIN**

**NHTSA ID Number:** 11323805

**Incident Date** May 7, 2020

**Consumer Location** BELMONT, NC

**Vehicle Identification Number** 1C4HJXCG1LW****

**Summary of Complaint**

| CRASH | No | I BELIEVE THE VEHICLE CLUTCH FAILED AND THE VEHICLE LOST FORWARD PROPULSION. PRIOR TO THE LOSS OF CLUTCH PRESSURE AND PROPULSION, A STRONG BURNING SMELL WAS NOTED COMING FORM THE VEHICLE, FOLLOWED BY SMOKE. THE VEHICLE WAS IN MOTION, GOING THROUGH STOP AND GO TRAFFIC, ON A CITY STREET. I BELIEVE THIS IS RELATED TO RECALL 20V124000. THE VEHICLE HAS 138 MILES ON IT AND WAS BEING DRIVEN HOME AFTER BEING PURCHASED NEW FROM THE DEALERSHIP. *TR |
|---|---|---|
| FIRE | No | |
| **INJURIES** | 0 | |
| DEATHS | 0 | |

*2021 Jeep Wrangler Unlimited (4 door)*

**February 8, 2021** NHTSA ID NUMBER: 11395249
**Components: POWER TRAIN**                                             ⊖

**NHTSA ID Number:** 11395249

**Incident Date** January 18, 2021

**Consumer Location** EASTVALE, CA

**Vehicle Identification Number** 1C4HJXEG2MW****

**Summary of Complaint**

| CRASH | No | DRIVING ON THE FREEWAY AND "SERVICE SHIFTER" WARNING |
|---|---|---|
| FIRE | No | APPEARED ON AND OFF. ALSO, WHILE DRIVING ON A CITY STREET THE WARNING CAME ON AND OFF. LIGHTS ON THE |
| INJURIES | 0 | SHIFTER FLASHED. DEALERSHIP SAYS THE VALVE BODY IN THE TRANSMISSION IS DEFECTIVE AND NEEDS TO BE |
| DEATHS | 0 | REPLACED OR THE WHOLE TRANSMISSION NEEDS TO BE REPLACED. THEY STATED IT'S A SERIOUS SAFETY CONCERN BECAUSE THE CAR CAN STOP SHIFTING ALTOGETHER WHILE DRIVING. |

**February 9, 2021** NHTSA ID NUMBER: 11395429
**Components: POWER TRAIN**                                             ⊖

**NHTSA ID Number:** 11395429

**Incident Date** February 9, 2021

**Consumer Location** MIAMI, FL

**Vehicle Identification Number** 1C4HJXDG5MW****

**Summary of Complaint**

| CRASH | No | THERE IS AN ACTIVE RECALL FOR THIS JEEP MODEL. I TOOK |
|---|---|---|
| FIRE | No | IT TO THE DEALER TODAY, FEBRUARY 9, 2021, TO GET IT FIX AND THEY DO NOT HAVE THE PARTS. THE DEALER (PLANET |
| INJURIES | 0 | DODGE IN MIAMI, FL) INSTRUCTED ME TO CALL FCA GROUP (FIAT CHRYSLER AUTOMOBILE -- OWNERS OF JEEP), WHICH I |
| DEATHS | 0 | DID IN FRONT OF THEM, AND NO FIXING OR RESOLUTION. PART OF THE RECALL STATES HEATED DEBRIS EXPELLED FROM THE TRANSMISSION CASE MAY COME IN CONTACT WITH COMBUSTIBLE MATERIALS IN THE VEHICLE, POTENTIALLY LEADING TO A FIRE. |

*2020 Jeep Gladiator*



**September 27, 2019** NHTSA ID NUMBER: 11258523
## Components: POWER TRAIN

**NHTSA ID Number:** 11258523

**Incident Date** September 21, 2019

**Consumer Location** TUCSON, AZ

**Vehicle Identification Number** 1C6JJTBGXLL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | DRIVING ON INTERSTATE 70 WITH APPROX SPEED OF 65. CAUGHT ON FIRE. FLAMES AND LOTS OF SMOKE COMING FROM UNDER JEEP. SMOKE ENTERED CAB. WHAT I THINK IS TRANSMISSION FLUID LEFT TRAIL ON INTERSTATE. I HAVE PHOTO.*DT*JB*DT *JS |
| FIRE | Yes | |
| INJURIES | 0 | |
| DEATHS | 0 | |



**March 10, 2020** NHTSA ID NUMBER: 11317226
## Components: POWER TRAIN, STEERING, UNKNOWN OR OTHER

**NHTSA ID Number:** 11317226

**Incident Date** February 3, 2020

**Consumer Location** KNIGHTDALE, NC

**Vehicle Identification Number** 1C6JJTBG7LL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | UNSURE OF WHAT THE ISSUE IS BUT HAVE OCCASIONAL ISSUES WITH CLUTCH AND STEERING IS VERY LOOSE. |
| FIRE | No | |
| INJURIES | 0 | |
| DEATHS | 0 | |

## March 14, 2020 NHTSA ID NUMBER: 11318040
## Components: POWER TRAIN



**NHTSA ID Number:** 11318040

**Incident Date** February 22, 2020

**Consumer Location** PLEASANT HILL, IA

**Vehicle Identification Number** 1C6HJTFG3LL****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I BOUGHT A BRAND NEW 2020 GLADIATOR NOT EVEN A MONTH OLD, 6 SPEED MANUAL. VEHICLE STARTED SMOKING PROFUSELY AND WAS EXPECTING A FIRE, LUCKILY ONLY BURNT CLUTCH SMELL. CONCERNED ABOUT DRIVING IT AND ITS BRAND NEW. THE TRUCK CAN EITHER START ON FIRE OR EXPLODE! THIS IS BASICALLY A ROLLING TICKING TIME BOMB. IT'S IN AT THE DEALERSHIP NOW WITH STILL NO REMEDY. FCA SHOULD BUY THIS BACK FROM ME. W12 RECALL PRESSURE PLATE IS ONLY A GUESS AND FRANKLY ITS BULLSHIT. THE ENTIRE TRANSMISSION NEEDS TO BE REPLACED WITH A MORE ROBUST AND RUGGED SOLUTION THAT MATCHES JEEPS BRAND.

## February 2, 2021 NHTSA ID NUMBER: 11394299
## Components: POWER TRAIN

**NHTSA ID Number:** 11394299

**Incident Date** December 25, 2020

**Consumer Location** DENVER, CO

**Vehicle Identification Number** 1C6HJTFG8LL****

**Summary of Complaint**

| CRASH | No |
|---|---|
| FIRE | No |
| INJURIES | 0 |
| DEATHS | 0 |

I NOTICED A STRONG BURNING SMELL DRIVING MY 2020 JEEP GLADIATOR WHILE DRIVING A FOREST ACCESS ROAD IN COLORADO. WHEN I TURNED THE CAR OFF AND THEN BACK ON AGAIN THE CAR FAILED TO MOVE WHEN PUT INTO GEAR. AFTER MULTIPLE ATTEMPTS - THE JEEP WOULD GO INTO GEAR BUT THE WHEELS NEVER ENGAGED. IT WAS TOWED FROM THE MOUNTAINS TO THE DEALER IN DENVER WHERE IT WAS DISCOVERED THAT THE CLUTCH WAS "CHARRED". THE JEEP HAD 16,000 MILES ON IT.I HAVE DRIVEN MANUAL TRANSMISSIONS MY ENTIRE LIFE (I AM 60 YRS OLD) AND NEVER HAD A CLUTCH GO UNDER 100K ON 6 VEHICLES



**February 4, 2021** NHTSA ID NUMBER: 11394659
## Components: POWER TRAIN

**NHTSA ID Number:** 11394659

**Incident Date** January 28, 2021

**Consumer Location** CARMEL, ME

**Vehicle Identification Number** 1C6HJTAG4LL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | THERE ARE NOW 2 RECALLS ON MANUAL TRANSMISSION |
| FIRE | No | CLUTCH FAILURES. ORIGINAL RECALL 20V124000 AND A NEW |
| INJURIES | 0 | ONE 21V028000. BOTH ARE FOR CATASTROPHIC PRESSURE PLATE FAILURES FOR CLUTCH SLIPPING, OVERHEATING AND |
| DEATHS | 0 | FRAGMENTING. WHAT IS GOING TO HAPPEN TO ALL THESE |

PRESSURE PLATES WHEN THE CLUTCH DISK WEARS DOWN OVER TIME AS IS NORMAL FOR A MANUAL TRANSMISSION AND STARTS SLIPPING THEN? IT WILL MOST LIKELY OVERHEAT THESE PRESSURE PLATES AND CAUSE FAILURE THEN. IF THESE PRESSURE PLATES ARE DEFECTIVE THEY NEED TO BE COMPLETELY REPLACED AND NOT JUST REROUTE ELECTRICAL LINES AND REPROGRAM THE SOFTWARE TO LIMIT ENGINE TORQUE. FIX THE ISSUE!



**February 6, 2021** NHTSA ID NUMBER: 11394957
## Components: POWER TRAIN

**NHTSA ID Number:** 11394957

**Incident Date** February 3, 2021

**Consumer Location** LIVONIA, MI

**Vehicle Identification Number** 1C6HJTAG1LL****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | VERY CONCERNED ABOUT THE CLUTCH PRESSURE PLATE |
| FIRE | No | RECALL, I AM PAYING A LOT OF MONEY FOR THIS JEEP THAT I |
| INJURIES | 0 | DONT FEEL SAFE DRIVING AS IT CAN CATCH ON FIRE. THE FACT THAT THERE IS NO FIX RIGHT NOW IS RIDICULOUS. I |
| DEATHS | 0 | HAVE DRIVEN JEEPS MY WHOLE LIFE AND NEVER HAD A LIFE |

THREATENING ISSUE LIKE THIS. IF THERE IS NO SOLID SOLUTION I WILL NEVER GET ANOTHER FCA AGAIN

58.     As a result of the combined factors described above, FCA knew about

the defect at the time of sale, but Plaintiff and Class members did not.  Given the

nature of the Clutch Defect, it would have been difficult for Plaintiff and Class

members to discover the defect until after they purchased the Class Vehicles.

### III.    FCA Never Disclosed The Clutch Defect

59.    FCA had a duty to disclose the Clutch Defect to consumers. However,

FCA has never disclosed the Clutch Defect in the window stickers, owner's

manuals, sales literature, or anywhere else before purchase.  For example, the

window stickers for the Class Vehicles (also known as "Monroney Stickers")

highlighted the 3.6L V6 engine and 6-speed manual transmission as a selling

feature:

**Base Price:**          **$38,665**

**JEEP WRANGLER UNLIMITED SAHARA**
**Exterior Color:** Sarge Green Clear–Coat Exterior Paint
**Interior Color:** Black Interior Color
**Interior:** Cloth Low–Back Bucket Seats
**Engine:** 3.6L V6 24V VVT Engine Upg I With Start Stop
**Transmission:** 6–Speed Manual Transmission

60.    The Monroney Stickers are nearly identical across the Class Vehicles.

For example, the Monroney Sticker for a 2021 Wrangler Unlimited above

described a "3.6L V6 24V VVT Engine Upg I With Start Stop" and "6-Speed

Manual Transmission."  These representations warranted that the 6-speed manual

transmissions installed in the Class Vehicles were suitable to handle the engine's

power output.

61.     The 3.6L V6 engine in the Class Vehicles was warranted by FCA to

produce 285 horsepower and 260 lb-ft of torque:





62.    FCA warranted that the transmissions in the Class Vehicles –
including the clutch components – were suitable for the specifications of the
engine's output of 285 horsepower and 260 lb-ft of torque.  Even though these
partial representations created a duty to disclose the Clutch Defect, FCA never
disclosed the Clutch Defect or otherwise disclosed that the clutches are prone to
failure.

## IV.    FCA Breached Its Warranties

63.    FCA voluntarily warranted through the Monroney Stickers and
otherwise that the manual transmissions – including the clutch components –
were capable of handling the 285 horsepower and 260 lb-ft of torque produced by
the Class Vehicles' engines.  FCA breached that promise by selling Class
Vehicles that affected by the Clutch Defect.  FCA further breached that promise
when it decided not to replace the clutches in the Class Vehicles, but rather "to
add software to reduce engine torque capability when clutch assembly
temperatures rise to a level that may damage the inner pressure plate."

64.    In addition to these express warranties formed through FCA's
voluntary representations, the Class Vehicles are also sold with materially
identical "Basic Limited Warranties" (the "Basic Warranty").  The Basic
Warranty runs for three years or 36,000 miles, whichever occurs first, and
purports to cover the cost of all parts and labor needed to repair any part in the

vehicle that is defective in material, workmanship or factory preparation, excluding tires.

### B. What Is Covered

The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exceptions are tires and headphones. These warranty repairs or adjustments, including all parts and labor connected with them, will be made by an authorized dealer at no charge, using new or remanufactured parts. You pay nothing for these repairs.

65.    The Basic Warranty begins "the date [the owner] take[s] delivery of the vehicle" or "when the vehicle was first put into service."  However, the "Clutch Discs or Modular Clutch Assembly" in the Class Vehicles are only warranted for 12 months or 12,000 miles:

### E. When It Begins

The Basic Limited Warranty begins on either of the following dates, whichever is earlier:
- The date you take delivery of the vehicle.
- The date when the vehicle was first put into service, for example, as a dealer "demo" or as a FCA US LLC company vehicle.

### F. When It Ends

The Basic Limited Warranty lasts for 36 months from the date it begins or for 36,000 miles on the odometer, whichever occurs first. But the following items are covered only for 12 months or for 12,000 miles on the odometer, whichever occurs first:
- Brakes (rotors, pads, linings, and drums)
- Bulbs
- Clutch Discs or Modular Clutch Assembly (if equipped)
- Wheel Alignment
- Wheel Balancing
- Windshield and Rear Window
- Wiper Blades

66.    The Class Vehicles are also covered by FCA's Powertrain Limited

Warranty (the "Powertrain Warranty"), which "lasts for up to five years or 60,000

miles on the odometer, whichever occurs first, calculated from the start date of

the Basic Limited Warranty" and covers the transmission:

> **Transmission**
>
> Transmission case and all internal parts; torque
> converter; drive/flex plate; transmission range switch;
> speed sensors; pressure sensors; transmission control
> module; bell housing; oil pan; seals and gaskets for
> listed components only.

67.    However, despite its existing knowledge of the Clutch Defect, FCA

excluded "manual transmission clutch parts" from the Powertrain Warranty:

> **NOTE:**
> MANUAL TRANSMISSION CLUTCH PARTS ARE
> NOT COVERED UNDER THE POWERTRAIN
> LIMITED WARRANTY.

68.    Class Members are able to bring their cars to any authorized FCA

Dealer for warranty repairs.

### 6.  How To Get Warranty Service

#### 6.1. Where To Take Your Vehicle

##### A. In the United States (We Include US Possessions And Territories As Part Of The United States For Warranty Purposes)

> Warranty service must be done by an authorized
> Chrysler, Dodge, Jeep or Ram dealer. We strongly
> recommend that you take your vehicle to your selling
> dealer. They know you and your vehicle best, and are
> most concerned that you get prompt and high quality
> service. If you move within the United States, warranty
> service may be requested from any authorized
> Chrysler, Dodge, Jeep or Ram dealer.

69.     Unbeknownst to Plaintiff and members of the putative classes at the time of purchase the Class Vehicles were defective.  The clutch design or specification contributed to the Clutch Defect and constituted a defect in design, materials, workmanship and factory preparation.  FCA's failure to assemble and manufacture the clutch in such a way as to prevent manifestation of the Clutch Defect during normal operation is a defect in materials, workmanship, factory preparation, as well as design.

70.     Replacing a clutch typically costs approximately $1,000-$2,000 for the part alone, not including the additional costs of labor.  Hence, Plaintiff and Class members suffer pecuniary harm when their warranty coverage is wrongfully denied, or any other circumstance requiring them to pay for repair or replacement of the clutch.  Additionally, if the Clutch Defect manifests in clutch failure, numerous other components can be damaged causing thousands of dollars in additional damage, leading to potential vehicle loss from fires and personal injury from debris.

71.     FCA breached its express and implied warranties through which it promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Clutch Defect.  Because the Clutch Defect was present at the time of sale or lease of the

Class Vehicles, FCA is required to repair or replace the clutch and components under the terms of the warranties.

72.　Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, FCA failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

73.　All Class Vehicles contained the Clutch Defect, whether latent or manifested, at the time of sale and within the warranty period.  However, despite the existence of the express warranties, FCA fails to honor the terms of the warranties by failing to adequately repair the defect free of charge.  Instead of honoring the warranty, FCA either denies warranty repairs outright, or fails to provide repairs that correct the Clutch Defect.  As well, the purported recall remedy alters the Class Vehicles in a manner that materially changes their specification from that which they were advertised, sold, and warranted.

74.　FCA's written warranties also were unconscionable.  FCA knew about the Clutch Defect at the time of sale or lease, but Plaintiff and Class members did not.  For instance, when Plaintiff Myslivecek purchased his Class Vehicle in November 2020, FCA had been formally investigating this issue for over a year and had even initiated the First Recall.  Nonetheless, FCA continued manufacturing the Class Vehicles with the defective clutch components without disclosing to Class Members the risk of the Clutch Defect.

75.     The Clutch Defect manifests during or after the warranty period, but prior to the end of the Class Vehicles' useful lives.  Plaintiff and Class members had no meaningful choice in determining the temporal and/or mileage limits of the warranties.  The warranties were drafted by FCA, without any input from consumers, and there was a gross disparity in bargaining power in favor of FCA. As a result, the terms of the warranties unreasonably favored FCA.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

> All persons in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class");

> All persons in Michigan who purchased, leased, or own a Class Vehicle (the "Michigan Subclass"); and

> All persons in New York who purchased, leased, or own a Class Vehicle (the "New York Subclass").

77.     Subject to additional information obtained through further investigation and discovery, the foregoing class definitions may be expanded or narrowed by an amended complaint, or narrowed at class certification, including through the use of multi-state subclasses.

78.     Specifically excluded from the Classes are FCA, FCA's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives,

employees, principals, servants, partners, joint ventures, or entities controlled by FCA, and their heirs, successors, assigns, or other persons or entities related to or affiliated with FCA and/or FCA's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

79.   **Numerosity.**  The members of the proposed Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are tens of thousands of individuals that are members of the proposed Classes.  Although the precise number of proposed members is unknown to Plaintiff, the true number of Class members is known by FCA.  More specifically, FCA and its network of authorized dealers, maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member.  Thus, Class members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

80.   **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether the clutch components installed in the Class Vehicles are

prone to premature failure;

(b)     Whether the clutch components installed in the Class Vehicles contain

a design defect and/or a defect in material, manufacturing and/or

workmanship;

(c)     Whether the Clutch Defect in the Class Vehicles present a safety risk;

(d)     Whether FCA knew or should have known about the Clutch Defect

when it sold the Class Vehicles;

(e)     Whether FCA had a duty to disclose that the clutch components are

defective and/or prone to premature failure and present a safety risk;

(f)     Whether FCA breached a duty to disclose the Clutch Defect;

(g)     Whether FCA intentionally and knowingly concealed, suppressed

and/or omitted material facts about the existence of the Clutch Defect;

(h)     Whether Class members would pay less for a Class Vehicle if FCA, at

the time of purchase or lease, disclosed the Clutch Defect;

(i)     Whether FCA is liable to Plaintiff and Class members under the

causes of action alleged in this complaint; and

(j)     Whether Plaintiff and Class members are entitled to damages,

restitution, equitable, injunctive, compulsory, and/or other relief

81.     **Typicality.**  Plaintiff's claims are typical of the claims of the other

Class members in that Plaintiff sustained damages arising out of the same illegal actions and conduct by FCA.

82.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Classes.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Classes.

83.    **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by Class members is relatively small compared to the burden and expense of individual litigation of their claims against FCA.  It would, thus, be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and

presents no unusual management difficulties under the circumstances.

84.    In the alternative, the Class and Subclasses may also be certified because:

(a)    the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for FCA;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    FCA acted or refused to act on grounds generally applicable to the Class and Subclasses whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
**Breach of Express Warranty**

85.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

86.    Plaintiff brings this claim on behalf of themselves and the Classes.

87.    FCA is and was at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

88.    With respect to leases, FCA is and was at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

89.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

90.    As described above, FCA promised, warranted, and/or advertised that the Class Vehicles were equipped with a 6-speed manual transmission suitable for an engine that produces 285 horsepower and 260 lb-ft of torque.  These warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles formed a basis of the bargain that was reached when Plaintiff and Class members purchased or leased their Class Vehicles.

91.    The Class Vehicles owned by Plaintiff and Class members are vulnerable to experiencing the Clutch Defect during normal operation and with no warning.  Plaintiff and Class members had no knowledge of the existence of the defect, which was known and concealed by FCA.  Despite the existence of these warranties, FCA failed to inform Plaintiff and Class members that the Class Vehicles contained the Clutch Defect.

92.    Plaintiff and Class members could not have reasonably discovered

the Clutch Defect prior to failure.  Due to the fact that the parts affected by the

Clutch Defect are internal, mechanical components, and the failure manifests

suddenly and without warning, Plaintiff and Class members have no warning that

the Clutch Defect has manifested until there is a failure.

93.    Because of the Clutch Defect, the Class Vehicles are not reliable and

owners of these vehicles have lost confidence in the ability of the Class Vehicles to

perform the function of safe and reliable transportation.

94.    FCA breached its express warranties by selling and leasing Class

Vehicles that were defective with respect to materials, workmanship or factory

preparation.  In other words, even though the vehicles are warranted to have a 6-

speed manual transmission capable of handling 285 horsepower and 260 lb-ft of

torque, the clutch and/or transmission components fail during normal operation.

95.    FCA further breached its express warranties by refusing to repair or

replace the faulty clutch and/or transmission components with parts of a more

robust and suitable specification. Instead, when FCA has replaced clutch

components due to the Clutch Defect, it has simply installed new versions of the

same problematic parts.  In connection with the purchase or lease of each of the

Class Vehicles, FCA provided warranty coverage for the Class Vehicles, as

alleged above.  Under the warranties provided to Plaintiff and Class members,

FCA promised to repair or replace covered defective components arising out of

defects in materials, workmanship or factory preparation, excluding tires, at no cost to owners and lessors of the Class Vehicles.

96.     Even when FCA does repair the Clutch Defect under the Basic warranty, the repair is ineffective.  That is because FCA's practice of replacing faulty clutch components with equally defective replacement parts leaves the clutch susceptible to repeated failure and thus does not effectively remedy the Clutch Defect.

97.     The limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the remedy is insufficient to make Plaintiff and Class members whole because, on information and belief, FCA has failed and/or have refused to adequately provide the promised remedies within a reasonable time.

98.     Because of FCA's breach of express warranty as set forth herein, Plaintiff and Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

99.     As a direct and proximate result of FCA's breach of express warranties, Plaintiff and Class members have been damaged in an amount to be determined at trial.

## COUNT II

### Breach of Implied Warranty

100.    Plaintiff incorporates by reference and re-allege herein all paragraphs alleged above.

101.    Plaintiff brings this claim on behalf of themselves and the Classes.

102.    FCA marketed and placed the Class Vehicles into the stream of commerce with the intent they be purchased by Plaintiff and Class Members.

103.    FCA is a "merchant" for purposes of the Uniform Commercial Code because the company regularly sells consumer automobiles of this kind.

104.    As a result of the Clutch Defect, the Class Vehicles were defective and not of merchantable quality when they left FCA's control.  Plaintiff and Class Members used their Class Vehicles for the ordinary purpose that consumer automobiles are used—to reliably, comfortably, and safely transport passengers and belongings for personal, family, or household purposes.  Despite Plaintiff's and Class members' ordinary and expected use of their vehicles, the Class Vehicles did not adhere to minimal consumer expectations, were not of fair and average quality, and would not pass without objection in the consumer automotive industry at the time of sale because the 6-speed manual transmissions was not able to handle the 285 horsepower and 260 lb-ft of torque produced by the engines in the Class Vehicles.

105.    FCA has been given a reasonable opportunity to cure its breach of the

implied warranty of merchantability and/or Plaintiff and Class members were not required to do so because such an opportunity would be futile.  FCA has known about the Clutch Defect since and failed to repair or replace the Class Vehicles to a minimum standard of quality.

106.   Plaintiff and other Class members who purchased or leased a Class Vehicle directly from Jeep are entitled to the benefit of their bargain: a Class Vehicle with a 6-speed manual transmission capable of handling the 285 horsepower and 260 lb-ft of torque produced by the Class Vehicles' engines that does not fail during normal operation.

107.   Likewise, Class members who purchased or leased a Certified Pre-Owned Class Vehicle are entitled to the benefit of their bargain: a Class Vehicle with a 6-speed manual transmission capable of handling the 285 horsepower and 260 lb-ft of torque produced by the Class Vehicles' engines that does not fail during normal operation.

108.   Class members who purchased new Class Vehicles from FCA-affiliated dealerships and Certified Pre-Owned Class Vehicles are the intended ultimate consumers of the Class Vehicles, and therefore are third-party beneficiaries for the purposes of their implied warranty claims.

109.   FCA's attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here.

Specifically, FCA's warranty limitation is unenforceable because FCA knowingly sold a defective product without informing consumers about the defect.  Further, a disclaimer of implied warranties is effective only if it is conspicuous and made available to the consumer prior to the sale of the product.  Any purported disclaimer here was not conspicuous and not made available to consumers prior to the sale of the product.

110.    As a direct and proximate result of FCA's breach of implied warranty, Plaintiff and Class Members have been damaged in an amount to be determined at trial.

## COUNT III
### Unjust Enrichment

111.    Plaintiff incorporates and reallege each preceding paragraph as though fully set forth herein.

112.    Plaintiff brings this claim on behalf of themselves and the Classes.

113.    To the extent required by law, Plaintiff brings this claim in the alternative to other legal claims alleged in the complaint, as permitted under Federal Rule of Civil Procedure 8.

114.    Plaintiff and members of the Classes conferred a benefit on FCA by leasing or purchasing the Class Vehicles.  FCA was and should have been reasonably expected to provide Class Vehicles free from the Clutch Defect.

115.    FCA unjustly profited from the lease and sale of the Class Vehicles at

inflated prices as a result of its omissions and concealment of the Clutch Defect in the Class Vehicles.  FCA benefited, at Plaintiff's expense, when it sold or leased Plaintiff a vehicle that was inferior to the vehicle Plaintiff thought they were purchasing, yet the price they paid was the price for a supposedly better functioning vehicle they thought they were purchasing.

116.   The unjust enrichment claim is not limited to omissions made at the point of sale.  FCA also unjustly profited at the expense of class members because it knows the Clutch Defect is substantially likely to materialize during the useful life of the Class Vehicles, yet refuses to provide an appropriate repair.

117.   As a proximate result of FCA's omissions and concealment of the Clutch Defect in the Class Vehicles, and as a result of FCA's ill-gotten gains, benefits and profits, FCA has been unjustly enriched at the expense of Plaintiff and Class Members.  It would be inequitable for FCA to retain its ill-gotten profits without paying the value thereof to Plaintiff and Class Members.

118.   There is a direct relationship between FCA on the one hand, and Plaintiff and Class Members on the other, sufficient to support a claim for unjust enrichment.  FCA failed to disclose the Clutch Defect to improve retail sales, which in turn improved wholesale sales.  Conversely, FCA knew that disclosure of the Clutch Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the

reputation of FCA's brand among Plaintiff and Class Members. FCA also knew its concealment and suppression of the Clutch Defect would discourage Plaintiff and Class Members from seeking replacement or repair of the clutches thereby increasing profits and/or avoiding the cost of such replacement or repairs.

119. Plaintiff and members of the Classes are entitled to restitution in the amount of FCA's ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

120. Plaintiff and members of the Classes seek an order requiring FCA to disgorge its gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court

<u>**COUNT IV**</u>

**Deceptive Acts or Practices, New York GBL § 349**

121. Plaintiff hereby incorporates by reference and reallege the allegations contained in the preceding paragraphs of this Complaint.

122. Plaintiff Myslivecek brings this claim individually and on behalf of the other members of the New York Subclass against Defendant.

123. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices concerning the Clutch Defect.

124. The foregoing deceptive acts and practices were directed at consumers.

125. The foregoing deceptive acts and practices are misleading in a

material way because, in the course of Defendant's business, they willfully failed to disclose and actively concealed the Clutch Defect as described above.  Further, Defendant misrepresented the true nature of the Class Vehicles.  Accordingly, Defendant made untrue, deceptive or misleading representations of material facts and omitted and/or concealed material facts.

126.   Defendant engaged in deceptive acts or practices when it failed to disclose material information concerning the Class Vehicles which was known to Defendant at the time of the sale.  Defendant deliberately withheld the information about the defect in order to postpone or prevent its warranty obligations and to induce the consumer to enter into a transaction.

127.   The reliability of the Class Vehicles was material to Plaintiff Myslivecek and the other members of the New York Subclass.  Had Plaintiff Myslivecek and the other members of the New York Subclass known that their Class Vehicles had the Clutch Defect, they would not have purchased the Class Vehicles, or would have done so on materially different terms.

128.   Because Defendant's deception takes place in the context of automobile safety, that deception affects the public interest.

129.   Plaintiff Myslivecek purchased his vehicle in New York.

130.   Defendant's unlawful conduct constitutes unfair acts or practices that have the capacity to and that do deceive consumers and have a broad impact on

consumers at large.

131.   Plaintiff and the other members of the New York Subclass suffered injury caused by Defendant's failure to disclose material information.  Plaintiff and the other members of the New York Subclass overpaid for their vehicles and did not receive the benefit of their bargain.  The defective Class Vehicles do not operate reliably and pose a grave safety threat.  The value of the Class Vehicles has diminished now that the defect has come to light, and that the class vehicles are not safe.

132.   On behalf of themselves and other members of the New York Subclass, Plaintiff Myslivecek seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, and reasonable attorneys' fees, and any other relief permitted under New York Gen. Bus. Law § 349.

## COUNT V
### False Advertising, New York Gen. Bus. Law § 350

133.   Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

134.   Plaintiff Myslivecek brings this claim individually and on behalf of the members of the proposed New York Subclass.

135.   Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false

advertising in violation of Section 350 of the New York General Business Law.

136.   The foregoing acts were directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

137.   This misrepresentations and omissions at issue here resulted in consumer injury or harm to the public interest.

138.   Plaintiff Myslivecek and New York Subclass members were injured as a direct and proximate result of Defendant's violation because (a) they would not have purchased Defendant's Products had they known the products were defective, (b) they overpaid for the class vehicles, and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff Myslivecek and members of the New York Subclass have been damaged.

139.   On behalf of himself and other members of the New York Subclass, Plaintiff Myslivecek seeks to enjoin the unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, and reasonable attorneys' fees, and any other relief permitted under New York Gen. Bus. Law § 350.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully asks this Court to enter judgment against FCA and in favor of Plaintiff and the Classes, and award the following relief:

A.   An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff representative of the Classes, and Plaintiff's counsel as counsel for the Classes;

B.   An order awarding declaratory relief and enjoining FCA from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.   Injunctive and equitable relief in the form of a comprehensive program to repair the Clutch Defect, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

D.   A declaration that FCA is financially responsible for all Class notice and the administration of Class relief;

E.   An order awarding to the extent available under governing law, restitution, disgorgement, punitive damages, treble damages, exemplary damages and statutory damages; and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.   A declaration that FCA is required to engage in corrective advertising;

G.   An order requiring FCA to pay both pre- and post- judgment interest on any amounts awarded;

H.  An award of costs, expenses, and attorneys' fees as permitted by law; and

I.  Such other or further relief as the Court may deem appropriate, just, and equitable.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  February 16, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:      */s/ Frederick J. Klorczyk III*

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email:  fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Joel D. Smith
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  jsmith@bursor.com

*Attorneys for Plaintiff*

**BARBAT, MANSOUR, SUCIU & TOMINA PLLC**

Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-Mail: nicksuciu@bmslawyer.com

*Local Counsel*